UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

KIS SURETY BONDS, LLP             CASE NO: 0:19-cv-80358-DMM

    Plaintiff,
vs.

TALISMAN CASUALTY INSURANCE
COMPANY, LLC a Florida Limited
Liability Company, and TALISMAN
CASUALTY INSURANCE COMPANY
LLC, a Nevada Limited Liability Company
Defendants.
_____/

## AMENDED COMPLAINT

Plaintiff KIS SURETY BONDS, LLC ("KIS" or "Plaintiff") hereby sues Defendants, TALISMAN CASUALTY INSURANCE COMPANY, LLC, a Nevada Limited Liability Company ("TALISMAN"), and MARTIEN EERHART ("EERHART"), an individual, and states as follows:

### Predicate Allegations

1. This is a cause of action for damages in excess of the jurisdictional limits of this Court exclusive of interest, attorneys fees and costs.

1. Plaintiff, KIS is a limited liability company, duly organized and existing under the laws of the State of Florida, with its principal place of business in Lake Mary, Seminole County, Florida.

2. Defendant TALISMAN is a limited liability company, duly organized and

*KIS v. Talisman*
*CASE NO: 0:19-cv-80358-DMM*
*Amended Complaint   - Page 2*

existing under the laws of the State of Nevada with its principal place of business in Slidell, Louisiana.

3. Defendant, EERHART is an individual and upon information and belief is a resident of Boston, Massachusetts. The nation of his citizenship is unknown.

4. This Court has jurisdiction over this matter pursuant to 28 USC Sect. 1332 because Plaintiff and Defendants are all citizens and residents of different states, and the amount in controversy exceeds the sum of Seventy Five Thousand ($75,000.00) Dollars.

5. Venue is proper in this Court because the causes of action accrued in this venue as set forth herein, and because this action was removed to this Court and is pending in this Court, and proceedings have commenced and are already ongoing in this Court.

6. All conditions precedent to the bringing of this cause of action have occurred, or have been performed, excused, discharged, satisfied or waived.

## **Allegations Common to All Counts**

7. Defendant, TALISMAN is an insurance company that operates pursuant to the laws of the State of Nevada, but has ongoing operations in other locations, including within Florida.  More specifically, at all material times hereto, TALISMAN has sold, marketed and issued surety bonds for projects located within the State of Florida and to Florida residents.  Further, TALISMAN enters into Participation Agreements with Florida residents, wherein TALISMAN sells to the Florida resident shares in a Nevada Captive Cell Insurer controlled and operated by TALISMAN.

*KIS v. Talisman*
*CASE NO: 0:19-cv-80358-DMM*
*Amended Complaint  - Page 3*

8. Plaintiff, KIS is a company that secures and issues surety bonds for companies and others and has been doing business with TALISMAN over many years. Its three principals are MARK KAPATOES ("Kapatoes"), RANDY SCHLEGER ("Schleger") and JEFFREY FELDMAN ("Feldman").

9. Prior to and in 2016, KIS and TALISMAN had a business relationship, as KIS would place insurance for its surety bond business with TALISMAN, for which TALISMAN earned premiums and gained other business advantages.

10. In or about 2016, TALISMAN through its President, JEFFREY SCHAFF ("Schaff") and its Surety Program Manager, JOSEPH MARCANTEL ("Marcantel") were in communications with the several principals of Plaintiff.  Marcantel and/or Schaff advised KIS that TALISMAN needed an additional infusion of funds or other assets to show on its financial books and records for filings with the Nevada Department of Insurance.

11. Thereafter, the parties entered into discussions and negotiations. Marcantel and/or Schaff advised representatives of Plaintiff, KIS that it needed $5,200,000.00, and if KIS could arrange to provide for the availability of that sum in funds or other credit instruments, it would offer a forty percent (40%) participation equity interest in the company.

12. KIS and its principals indicated that they could do also and would be interested in making a deal.  As a result, sometime prior to December 11, 2016, Marcantel, on behalf of TALISMAN, provided Kapatoes with a draft Equity Agreement. At that time, Marcantel further recommended to Kapatoes that the equity interest being

*KIS v. Talisman*
*CASE NO: 0:19-cv-80358-DMM*
*Amended Complaint   - Page 4*

offered should be held in trust to avoid any regulatory process.  Further, Marcantel advised Kapatoes that TALISMAN had checked with its auditor and that although shares in trust would still need to be reported, phantom shares would guarantee all the rights of shares in trust but would only be reported on the sale or closure of TALISMAN.

13.   In connection with its potential obligations under the proposal, Plaintiff contacted Defendant, EERHART to help arrange for a Proof of Funds or other similar equity or credit arrangement to transfer to TALISMAN.  Plaintiff had previously done business with EERHART with similar types of credit, bonds and other credit instruments in exchange for the payment from KIS of premiums to companies used by as part of this business.

14.   EERHART indicated to Plaintiff that he could arrange for $5,200,000.00 Proof of Funds through JP Morgan Chase Bank ("Chase Bank") and would do so. He advised KIS that the premium for such Proof of Funds, which was to be paid by KIS would cost Seventy Five Thousand ($75,000.00) Dollars.

15.   In connection with those discussions, on or about December 11, 2016, Plaintiff KIS and Defendant TALISMAN entered into an Equity Agreement ("Equity Agreement") in which the parties agreed that in exchange for the sum of $5,200,000.00 through the Proof of Funds and set forth in the POF Letter, TALISMAN would offer and exchange shares in the company representing a forty (40%) percent interest in its company to Plaintiff.   A copy of the Equity Agreement, which set forth the material terms of the agreement between the parties, is attached hereto and incorporated herein as Exhibit "A".

*KIS v. Talisman*
*CASE NO: 0:19-cv-80358-DMM*
*Amended Complaint   - Page 5*

16. Sometime between December 10, 2016 and December 29, 2018, a representative of TALISMAN completed and submitted an application to obtain the POF application sent to Marcantel, on behalf of TALISMAN, on December 9, 2016. This was submitted to EERHART to obtain the POF that would satisfy the obligations under the Equity Agreement.

17. Thereafter, EERHART advised representatives of KIS that he had arranged the Proof of Funds in the sum of $5,200,000.00 from an account in which Plaintiff showed that he had a balance in excess of $5.4 Million.

18. On or about December 29, 2016, Plaintiff paid to a company called Wild Stallion LLC, at the direction and instructions of Defendant EERHART, and transfer the premium payment of Seventy Five Thousand ($75,000.00) Dollars by bank wire transfer. A copy of the Wire Transfer Confirmation is attached hereto as Exhibit "B".

19. On or about December 30, 2016, Plaintiff received the Proof of Funds Certificate from Chase Bank.  Kapatoes, on behalf of the PLAINTIFF, and pursuant to the application made by TALISMAN and the efforts EERHART, provided Marcantel, on behalf of TALISMAN, the December 29, 2016 Bank Confirmation Letter ("POF Letter") from Chase Bank.  The POF Letter showed a Proof of Funds availability of $5,200,000.00. A copy of the POF Letter is attached hereto and incorporated herein as Exhibit "C."

20. Thereafter, TALISMAN made use of the POF Letter and the fact of the availability of funds that it represented.   However, despite repeated requests and efforts to obtained what it was entitled to pursuant to the Equity Agreement, TALISMAN

*KIS v. Talisman*
*CASE NO: 0:19-cv-80358-DMM*
*Amended Complaint   - Page 6*

never issued a forty (40%) percent interest in TALISMAN to Plaintiff or any of its members.

### Count I - Fraud - Eerhart

21. Plaintiff, KIS realleges paragraphs 1 through 20 as though fully set forth herein.

22. On several occasions, both prior to, and at or about the time KIS requested the services of EERHART to help arrange for the $5,200,000.00 POF Letter, EERHART advised representatives of KIS that he had the ability to arrange for such issuance of credit documents and certificates issued by banks and other financial institutions. These would require the payment by KIS of premiums for such credit instruments.

23. Plaintiff reasonably and justifiably relied upon the statements made in relation to the POF letter for TALISMAN because they had previously done business with EERHART and he was able to establish credit arrangements and issue instruments in and for such other various matters.

24. After the POF Letter was issued, in both 2017 and 2018, Plaintiffs repeatedly requested that TALISMAN issue the 40% equity interest that it had been promised pursuant to the Equity Agreement. TALISMAN initially delayed and stalled doing so, providing various excuses why the issuance of the shares was delayed. Eventually, TALISMAN's representatives began to request additional information about the POF Letter.

25. On December 13, 2017, Schaff, on behalf of TALISMAN, sent an e-mail to EERHART directly regarding the need of TALISMAN to request and obtain an updated

*KIS v. Talisman*
*CASE NO: 0:19-cv-80358-DMM*
*Amended Complaint   - Page 7*

Chase Bank statement, which was then provided.  On December 14, 2017, Eerhart responded by e-mail to Schaff and Feldman.  A confirmation statement similar to Exhibit "C", except with the updated date of December 31, 2017 - one year later - was thereafter provided by EERHART.

26. On January 7, 2018, Schaff sent an email to Marcantel regarding verification of the $5,200,000.00 reflected in Exhibit "C" and the subsequent similar POF Letter because Schaff, on behalf of TALISMAN, would be meeting with Nevada Division of Insurance the following week. On January 8, 2018, Marcantel forwarded Schaff's January 7, 2018 e-mail to Kapatoes.  On January 20, 2018, Schaff sent an email to both Marcantel and Kapatoes advising that TALISMAN was still in need of the new December 31, 2017 POF Letter.

27. Plaintiff thereafter contacted EERHART and EERHART repeatedly assured Plaintiff that it was in fact a proper POF Letter and was issued by Chase Bank, showing the availability of such credit, and that he would provide the documentation necessary to prove that. EERHART promised to produce further information, but failed to do so.

28. The POF Letter that EERHART caused to be issued on the stationary of Chase Bank was false, and was never issued by Chase Bank.  This was not known by KIS until sometime in or about late July or August of 2019.

29. The statements made and actions taken by EERHART were false when made, and were done intentionally by EERHART to induce Plaintiffs to pay to him the Seventy Five Thousand Dollar ($75,000.00) premium payment paid by Plaintiff.

*KIS v. Talisman*
*CASE NO: 0:19-cv-80358-DMM*
*Amended Complaint  - Page 8*

30. During the course of dealings with EERHART, EERHART used supposed various companies, which were nothing more than his alter ego, as part of his scheme to defraud and as part of these fraudulent activities. These companies not only included Wild Stallions, LLC, the purported recipient of the wire transfer of the premium, but a company called Ming Global Trading as well. These companies, including Wild Stallkions, LLC, had no real business and were just names used by EERHART to try to hide his scheme. EERHART also used an e-mail address of marty@confirmedfunds.com to perpetrate these activities as well.

31. As a direct and proximate result of the false misrepresentations and fraudulent statements and actions of Defendant, EERHART, Plaintiff, KIS sustained significant damages, including not only the loss of the premium payment, but the lost opportunity to purchase the interest in TALISMAN.

WHEREFORE, Plaintiff, KIS SURETY BONDS LLC demands entry of a judgment against Defendant MARTIEN EERHART in a sum in excess of the jurisdictional limits of this Court, together with an award of interest, costs and any other and further relief this Court deems just and proper.

### Count II - Unjust Enrichment - TALISMAN

32. Plaintiff, KIS realleges paragraphs 1 through 14, 17 through 19, 21, 25 through 29 as though fully set forth herein.

33. Regarding the POF Letter to TALISMAN, TALISMAN's representatives, including but not limited to Schaff and Marcantel advised representatives of KIS, including but not limited to Kapatoes as well as Schleger and Feldman, that they needed

*KIS v. Talisman*
*CASE NO: 0:19-cv-80358-DMM*
*Amended Complaint  - Page 9*

the Proof of Funds for their annual filings with the Department of Insurance, to establish for the Department that it had sufficient assets to continue to write insurance and conduct business activities in Nevada.

34. In or about late December, 2016, Plaintiff provided the POF Letter to TALISMAN, which upon information and belief, TALISMAN used and presented and included in its filings with and to the Nevada Department of Insurance as part of its financial statements.

35. At various times during 2017 and 2018, Plaintiff continued to request the issuance of the 40% shares of stock that TALISMAN had agreed to provide to Plaintiff. TALISMAN failed and refused to do so, but continued to use the POF Letter as part of its filings with the Department of Insurance.

36. At some point in late 2018, TALISMAN for the first time indicated that it did not believe that the Proof of Funds Letter was proper and legitimate. However, TALISMAN continued to use it as part of its annual filings with the Department of Insurance.

37. Both prior to the time as well as after the time Plaintiff provided the POF Letter to TALISMAN, KIS was unaware that the POF Letter was not legitimate and had not in fact been issued by Chase Bank.  Plaintiff had sufficient lines of credit in order to issue a proper Proof of Funds, as such credit could be arranged, but it was unaware that EERHART had perpetrated a fraud upon KIS.

38. It was not until shortly before the filing of this Amended Complaint that Plaintiff became aware that the Proof of Funds issued by EERHART was false and fraudulent.

*KIS v. Talisman*
*CASE NO: 0:19-cv-80358-DMM*
*Amended Complaint   - Page 10*

39. Notwithstanding, TALISMAN used and continue to use the POF Letter, both prior to the time it knew it was fraudulent and after, as well as during periods of time when it suspected that the funds may not have been available as purportedly established by EERHART. TALISMAN continued to use the POF Letter in its dealings with the Nevada Department of Insurance, as proof of the availability of $5,200,000.00 from KIS.

40. Plaintiff conferred a benefit upon Defendant, TALISMAN as TALISMAN used the POF Letter to continue to operate and do business and earn significant income.

41. Had Plaintiff KIS not conferred this benefit upon TALISMAN, TALISMAN would have been unable to establish sufficient assets in order to establish its right to continue to do business under the Nevada Department of Insurance Rules and Regulations.

42. It would be unjust and inequitable to allow TALISMAN to retain these benefits without paying to KIS the reasonable value of those benefits bestowed.

43. As a direct and proximate result of the foregoing, Plaintiff KIS has sustained damages.

WHEREFORE, Plaintiff KIS SURETY BONDS demands entry of Judgment against Defendant, TALISMAN CASUALTY INSURANCE COMPANY, LLC, in an amount in excess of the jurisdictional limits of this Court and with their costs, interest and for any other and further relief this Court deems just and proper.

*KIS v. Talisman*
*CASE NO: 0:19-cv-80358-DMM*
*Amended Complaint  - Page 11*

***PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE.***

Respectfully submitted,
Counsel for the Plaintiff
Seiden Law Group, LLC.
150 East Boca Raton Road, Suite B
Boca Raton, Florida 33432
(561) 703-7002
aseiden@seidenlawgroupllc.com


By:      /s/  Andrew Seiden
         Andrew Seiden, Esq.
         Florida Bar No. 373672


DAVID M. BECKERMAN, P.A.
7000 West Palmetto Park Road - Suite 500
Boca Raton, FL 33433
DavidMBeckermanPA@gmail.com
David@beckermanlaw.com
(561) 391-6000 Office
(561) 391-6044 Fax


By:      /s/ David M. Beckerman
         David M. Beckerman, Esq.,
         Florida Bar No: 324477