UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

KIS SURETY BONDS, LLC,

    Plaintiff,                                      Case No.: 9:19-cv-80358-DMM

v.

TALISMAN CASUALTY INSURANCE COMPANY, LLC, a Nevada Limited Liability Company, and MARTIEN EERHART,

    Defendants.
_____/

**DEFENDANT, TALISMAN CASUALTY INSURANCE
COMPANY, LLC'S ANSWER AND AFFIRMATIVE DEFENSES
TO PLAINTIFF, KIS SURETY BONDS, LLC'S AMENDED COMPLAINT**

Defendant, Talisman Casualty Insurance Company, LLC ("Talisman"), by and through its undersigned counsel, files this Answer and Affirmative Defenses to Plaintiff, KIS Surety Bonds, LLC's ("KIS Surety") Amended Complaint [Dkt. 31]. Talisman responds to the correspondingly numbered paragraphs of the Amended Complaint as follows:

**ANSWER**

**Predicate Allegations**

1. (First ¶ 1) Without knowledge; therefore, denied.

1. (Second ¶ 1) Without knowledge; therefore, denied.

2. Admitted that Talisman is a Nevada limited liability company.

3. Denied.

4. Without knowledge; therefore, denied.

5. Without knowledge; therefore, denied.

6. Without knowledge; therefore, denied.

## Allegations Common to All Counts

7. Admitted that Talisman is an insurance company that operates under Nevada laws and conducts business and issues policies/bonds in Florida. Otherwise, without knowledge; therefore, denied.

8. Without knowledge; therefore, denied.

9. Denied.

10. Admitted that in or about 2016 Talisman was in communications with Mark Kapatoes discussing a possible investment in Talisman. The written communications speak for themselves. Otherwise, denied.

11. Admitted that Talisman was in discussions and negotiations with Mark Kapatoes discussing a possible investment in Talisman. The written communications speak for themselves. Otherwise, denied.

12. Admitted that Talisman was in discussions and negotiations with Mark Kapatoes discussing a possible investment in Talisman. The written communications speak for themselves. Otherwise, denied.

13. Without knowledge; therefore, denied.

14. Without knowledge; therefore, denied.

15. Admitted that Talisman and KIS Surety entered into the Equity Agreement attached to the Amended Complaint as Exhibit "A." The Equity Agreement speaks for itself. Otherwise, denied.

16. Denied.

17. Without knowledge; therefore, denied.

18. Without knowledge; therefore, denied.

19. Admitted that Talisman provided information to KIS Surety to open a bank account on behalf of Talisman and that Talisman received a copy of Exhibit "C" by email. Denied that Exhibit "C" is legitimate correspondence from JPMorgan Chase Bank, NA, or any of its related entities, or that Exhibit "C" contains accurate information. The written communications speak for themselves. Otherwise, denied.

20. Denied.

## **Count I – Fraud – Eerhart**

21. Talisman realleges and incorporates responses to paragraphs 1 through 20 as if fully set forth herein.

22. Without knowledge; therefore, denied.

23. Without knowledge; therefore, denied.

24. Admitted that KIS Surety requested Talisman to issue the 40% equity interest under the Equity Agreement. Denied that Talisman had an obligation to do so due to the fact that the proof of funds letters are false and fraudulent.

25. Admitted that Talisman and KIS exchanged emails related to the fraudulent proof of funds letters and attachments. The written communications speak for themselves. Otherwise, denied.

26. Admitted that Talisman and KIS exchanged emails related to the fraudulent proof of funds letters and attachments. The written communications speak for themselves. Otherwise, denied.

27. Without knowledge; therefore, denied.

28. Admitted that the proof of funds letters are false and fraudulent. Denied that KIS Surety did not know that the proof of funds letters were false and fraudulent until July or August of 2019.

29. Without knowledge; therefore, denied.

30. Without knowledge; therefore, denied.

31. Without knowledge; therefore, denied.

### Count II – Unjust Enrichment – Talisman

32. Talisman realleges and incorporates responses to paragraphs 1 through 14, 17 through 19, 21, and 25 through 29 as if fully set forth herein.

33. Denied.

34. Admitted that KIS Surety provided the proof of false and fraudulent funds letter to Talisman. Otherwise, denied.

35. Admitted that KIS Surety requested Talisman to issue the 40% equity interest under the Equity Agreement. The written communications speak for themselves. Denied that Talisman had an obligation to do so due to the fact that the proof of funds letters are false and fraudulent. Additionally denied that Talisman used the proof of funds letters as part of its filings with the Nevada Department of Insurance.

36. Admitted that Talisman advised KIS Surety that the proof of funds letters were false and fraudulent. The written communications speak for themselves. Otherwise, denied.

37. Denied.

38. Denied.

39. Denied.

40. Denied.

41. Denied.

42. Denied.

43. Denied.

## GENERAL DENIAL

Talisman denies all allegations of the Amended Complaint that it did not specifically admit above.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

KIS Surety's unjust enrichment count fails because an express and valid contract exists, the Equity Agreement, between KIS Surety and Talisman. If an express contract exists between the parties an unjust enrichment count fails. *Leader Glob. Sols., LLC v. Tradeco Infraestructura, S.A. DE C.V.*, 155 F. Supp. 3d 1310, 1319-20 (S.D. Fla. 2016) *citing Greenfield v. Manor Care*, 705 So. 2d 926, 930-31 (Fla. 4th DCA 1997), *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 427 F. App'x 714, 722 (11th Cir. 2011), and *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008) ("upon a showing that an express contract exists between the parties . . . [an] unjust enrichment . . . count fails."). KIS Surety admits that it cannot bring a breach of contract count because it does not have evidentiary support. [Dkt. 21, ¶ 14]. KIS Surety's only potential claims against Talisman relate to the Equity Agreement, which KIS Surety admits is valid and enforceable but for KIS Surety's failure to comply with its conditions precedent.

## SECOND AFFIRMATIVE DEFENSE

Even if a claim for unjust enrichment were not barred due to the express contract, which it is, there is no possible way KIS Surety can show that providing the proof of funds letters,

which KIS Surety admits are fraudulent, conferred any benefit to Talisman. Not only were the proof of funds letters fraudulent, but they also include misleading and deceptive information to make Talisman believe that KIS Surety deposited $5.2 million in an account for Talisman. KIS Surety admits that it only paid $75,000 to make it look like it deposited $5.2 million in an account for Talisman. [Dkt. 31, ¶ 14]. Even assuming everything that KIS Surety's alleges is true, no benefit was ever conferred upon Talisman because no money was ever located in a JPMorgan Chase Bank, N.A. account. Talisman's auditor could not confirm the $5.2 million in funds existed and needed evidence of the funds. [Dkt. 31, ¶ 28]. When KIS Surety could not provide evidence of the $5.2 million, Talisman had to take steps, at its own cost, to ensure it held adequate funds related to its insurance portfolio to satisfy State of Nevada insurance requirements. JP Morgan Chase Bank, N.A. confirmed by sworn testimony that the proof of funds letters were fraudulent. The delivery of fraudulent letters and failure to provide the contractually required $5.2 million, under the Equity Agreement, could not confer a benefit upon Talisman.

### THIRD AFFIRMATIVE DEFENSE

KIS Surety fraudulently induced Talisman to enter into the Equity Agreement. It represented that it had the ability to pay Talisman the $5.2 million in exchange for the 400 shares. However, KIS Surety knew when it entered the Equity Agreement it did not hold funds sufficient to pay Talisman for the 400 shares and it knew it would not be able to obtain such funds. KIS Surety intended to induce Talisman to rely on its false statements. Talisman justifiably relied on these false statements by entering the Equity Agreement. KIS Surety intended to deceive Talisman into thinking that it actually made the $5.2 million payment so that

KIS Surety could still obtain the 400 shares and share in the future benefits that emanate from ownership in Talisman.

### FOURTH AFFIRMATIVE DEFENSE

KIS Surety waived any rights to recover under the Equity Agreement or for any equitable claims related to the Equity Agreement. It voluntarily relinquished its known right to any benefits under the Equity Agreement, or the fraudulent proof of funds letters, when it failed to deliver the required payment described therein.

### FIFTH AFFIRMATIVE DEFENSE

KIS Surety is equitably estopped from recovering from Talisman because it represented that it could pay $5.2 million in exchange for stock in Talisman. That representation was a material term that became part of the Equity Agreement. Talisman relied on KIS Surety's representation in entering into the Equity Agreement, which it never would have done had it known KIS Surety would not be able to pay for the stock. Talisman changed positions to its detriment by waiting for KIS Surety to fulfill its obligations when it could have been pursuing other business options that would have benefited it.

### SIXTH AFFIRMATIVE DEFENSE

KIS Surety's unjust enrichment count cannot exist where payment has been made for the benefit conferred. Since the false and fraudulent proof of funds letters could not confer a benefit, Talisman's only obligations for payment to KIS Surety would result from bonds/policies that KIS Surety procured for Talisman. Another company, owned by one of the principals for KIS Surety, procured bonds/policies for Talisman for which that company kept a portion of the respective premiums before issuing payment to Talisman for the remainder of the premium. However, KIS Surety did not provide any bonds/policies to Talisman for which Talisman or KIS

Surety received premium payments. KIS Surety has therefore received all monies it would otherwise receive related to procured bonds/policies and is not entitled to any payment from Talisman.

Dated: October 8, 2019

Respectfully submitted,

      */s/ Ryan J. Weeks*
BRETT D. DIVERS, ESQ.
Florida Bar No. 0973246
RYAN J. WEEKS, ESQ.
Florida Bar No. 57897
MILLS PASKERT DIVERS
100 N. Tampa St., Ste. 3700
Tampa, FL 33602
(813) 229-3500 (Telephone)
(813) 229-3502 (Fax)
bdivers@mpdlegal.com
rweeks@mpdlegal.com
sjames@mpdlegal.com
csoltis@mpdlegal.com
*Counsel for Defendant, Talisman Casualty Insurance Company, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 8, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which provided electronic notice to all counsel of record.

| **Andrew Seiden, Esq.**<br>Seiden Law Group, LLC<br>150 E. Boca Raton Rd., Ste. B<br>Boca Raton, FL 33432<br>aseiden@seidenlawgroupllc.com<br><br>*Counsel for KIS Surety Bonds, LLC* | **David M. Beckerman, Esq.**<br>David M. Beckerman, P.A.<br>7000 W. Palmetto Park Rd., Ste. 500<br>Boca Raton, FL 33433<br>DavidMBeckermanPA@gmail.com<br><br>*Co-Counsel for KIS Surety Bonds, LLC* |
|---|---|

      */s/ Ryan J. Weeks*
Attorney